THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:07-CV-170-GCM

| | |
|---|---|
| P.L., a minor, by and through his legal guardians, SUSAN and JOSEPH LIUZZO, and SUSAN and JOSEPH LIUZZO, Individually, )<br>)<br>)<br>)<br>)<br>Plaintiffs )<br>)<br>v. )<br>)<br>CHARLOTTE-MECKLEMBURG BOARD OF EDUCATION )<br>)<br>Defendant. )<br>) | ORDER |

**THIS MATTER** is before the Court on Plaintiffs' Petition challenging a state administrative decision in a special education case pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA"). For the reasons explained below, Plaintiffs' Petition is **DENIED**.

**I. BACKGROUND**

Plaintiffs are the parents of P.L., a twelve year-old, fifth grade student in the Charlotte-Mecklenburg school system ("CMS") who has been in special education since his kindergarten year. P.L. entered CMS as a second grade student at Blythe Elementary School in the 2002/2003 school year. During the 2004/2005 school year, P.L.'s medical diagnosis changed from Asperger's syndrome to Pediatric Autoimmune Neuropsychiatric Disorder ("PANDAS"), an autoimmune disorder that causes inflammation of the area of P.L.'s brain controlling movement and behavior.

Plaintiffs bring their claim pursuant to the IDEA, which creates a federal grant program to assist state and local agencies in the education of disabled children. 20 U.S.C. § 1412 (2000). In order to receive a grant under the IDEA, states must provide disabled children with the opportunity to receive a "free appropriate public education" ("FAPE") in the least restrictive environment necessary. 20 U.S.C. § 1412(a)(5)(A). When a school district determines that a child is eligible to receive special education services, each school year the school district must develop an Individualized Education Program ("IEP") for the child. The IEP is formulated by an IEP Team, consisting of the child's parents, teachers, a representative of the local educational agency, and other persons with special knowledge or expertise regarding the child. 20 U.S.C. § 1412(d)(1)(B). The IEP must detail the student's current educational performance, set forth measurable annual goals for the student's education, state the special educational services and other aids that will be provided for the child, and set forth the projected date that such services will begin. 20 U.S.C. § 1412(d)(1)(A).

IEP meetings for P.L. were held annually as well as at Plaintiffs' request. These meetings covered a variety of topics such as an annual review of the IEP, changes in P.L.'s classification, the parents' requests for Extended School Year ("ESY") services, and re-evaluations of P.L.'s progress throughout the year. These meetings usually occurred at the beginning and end of each school year, but could be as frequent as once every several months.

Concerned that P.L. was not making sufficient academic progress at Blythe Elementary School, Plaintiffs enrolled P.L. in Huntington Learning Center ("Huntington"). P.L. was enrolled in Huntington from November 20, 2004 until June 8, 2006. Huntington is a private supplemental education center and provided services costing Plaintiffs $7,519. Plaintiffs first requested reimbursement for these services as part of a letter mailed to CMS on May 1, 2006.

Plaintiffs' primary purpose, however, for writing the May 1 letter was to request that CMS pay for an Independent Educational Evaluation ("IEE") from the Student Success Center at All Kinds of Minds ("Student Success Center"). On May 9, 2006, before hearing back from CMS, Plaintiffs had P.L. evaluated by the Student Success Center. The cost was $3,250. CMS sent two letters responding to their requests, respectively dated May 21, 2006 and June 1, 2006. In the letters, CMS denied Plaintiffs' request for reimbursement for Huntington and offered to pay up to $800 for an IEE from an approved list of evaluators. Plaintiffs, however, did not receive the letters until weeks later, and the June 6, 2006 IEP meeting notes indicate that they had yet to receive a response to their requests. Plaintiffs claim the first letter they received was postmarked June 8, 2006.

Plaintiffs, dissatisfied with the plan formulated for P.L. in the June 6, 2006 IEP, as well as CMS's denial of their reimbursement claims, requested an impartial due process hearing under Section 1415(f) of the IDEA. Plaintiffs filed a petition in the North Carolina Office of Administrative Hearings, claiming that P.L. was denied FAPE and requesting reimbursement for the IEE and Huntington tutoring services. After initial oral arguments, the Administrative Law Judge ("ALJ") granted summary judgment for Board of Education. The ALJ then conducted an administrative hearing to determine Plaintiffs' educational status during the appeal of the current IEP. In that hearing, the ALJ decided to revisit his grant of summary judgment. In his final decision on January 12, 2007, the ALJ held on both procedural and substantive grounds that CMS failed to provide Plaintiff with FAPE during his time at Blythe Elementary. CMS was ordered to reimburse Plaintiffs' claims for Huntington and the IEE, and to provide compensatory education to remedy the deficiencies in P.L.'s educational services.

Both parties then appealed to the North Carolina Department of Public Instruction, where

the claims were heard by a State Review Officer ("SHRO"). The SHRO reversed the ALJ's final decision, holding that (1) Plaintiffs' claims for tutoring reimbursement were time barred under North Carolina's sixty-day statute of limitations; (2) Plaintiffs' request for reimbursement of the IEE was denied due to their failure to comply with procedural guidelines; and (3) Plaintiffs failed to meet their burden of persuasion that the June 6, 2006 IEP did not provide P.L. with FAPE.

## II. DISCUSSION

### A. Standard of Review

Under the IDEA, a party who is aggrieved by the findings and decision of a state administrative hearing officer can bring a civil action in a United States district court, without regard to the amount in controversy. 20 U.S.C. § 1415(i)(2). In reviewing the complaint, the Court must (1) receive the records of the administrative proceeding; (2) hear additional evidence, if requested by any of the parties; and (3) grant such relief as the Court determines is appropriate based on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C). This standard of review "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. Of Educ. v. Rowley*, 458 U.S. 176, 206 (1982).

"In a judicial proceeding under the IDEA, a reviewing court is obliged to conduct a modified *de novo* review, giving 'due weight' to the underlying administrative proceedings." *M.M. v. Sch. Dist. of Greenville County.*, 303 F. 3d 523, 530-31 (4th Cir. 2002). The Fourth Circuit held "due weight" to mean "that the findings of fact made in the state administrative proceedings must 'be considered prima facie correct.'" *Peterson v. Hanover County Sch. Bd.*, 516 F. 3d 254, 259 (4th Cir. 2008) (quoting *Doyle v. Arlington County Sch. Bd.*, 953. F.2d 100,

105 (4th Cir. 1991)). While the district court makes an independent decision based on a preponderance of the evidence, if the court chooses not to follow the administrative factual findings, it is required to explain the reason for not doing so. *A.B. v. Lawson*, 354 F.3d 315, 325 (4th Cir. 2004).

A plaintiff bears the burden of proof in challenging a state administrative decision, *Barnett v. Fairfax County Sch. Bd.*, 927 F. 2d 146, 152 (4th Cir. 1991), as well as in establishing that an IEP is inappropriate. *Schaffer v. Weast*, 546 U.S. 49, 62 (2005). At the time of the events that gave rise to this litigation, North Carolina implemented the IDEA through N.C. Gen. Stat. § 115C-111, et seq. (2000) (repealed July 10, 2006). This statute gives parents the right to a hearings before the NC Office of Administrative Hearings, as well as the right to review within the agency. Whether an IEP is appropriate is a factual question first answered by an administrative hearing officer, and then viewed again on appeal by a reviewing officer. In this two-tiered review process, if both the hearing and reviewing officer have reached the same conclusion, a court must accord greater deference to their findings. *M.M. v. Sch. Dist. of Greenville County*, 303 F. 3d. 523, 531 (4th Cir. 2002). A reviewing officer must not depart from the normal process of fact-finding in reaching a decision opposed to that of the hearing officer. *G. v. Fort Bragg Dependent Schs.*, 343 F.3d 295, 303 (4th Cir. 2003).

B. **Reimbursement for Huntington Learning Center**

CMS does not need to reimburse Plaintiffs for P.L.'s tutoring from November 20, 2004 until June 8, 2006 because (1) for all but three days of that time period, Plaintiffs failed to comply with the statute of limitations in challenging the FAPE provided by CMS; and (2) regarding the three days of tutoring not barred by the statue of limitations, P.L. was provided with FAPE, and therefore Plaintiffs are not entitled to reimbursement. A local educational

agency that makes a FAPE available to a disabled child does not have to pay for private educational services for that child. 20 U.S.C. § 1412(a)(10)(C)(i). To receive reimbursement for the tutoring services at Huntington Learning Center, Plaintiffs must show P.L. was denied FAPE for that time period at an impartial due process hearing.

### 1. Claims for reimbursement that are time-barred

Plaintiffs' claims span November 2004 to June 8, 2006. During this period, Congress enacted the IDEA 2004 amendments, effective July 1, 2005. The limitations period on Plaintiffs' claims before and after July 1, 2005 will therefore be addressed separately.

Plaintiffs' claims from November 2004 until July 1, 2005 are subject to North Carolina's 60-day statute of limitations. Prior to the July 1, 2005 effective date of the IDEA 2004 amendments, the IDEA did not limit the time period in which a parent could request a due process hearing, and a court applies the statute of limitations of the state in which the court sits. *C.M. v. Bd. of Educ. Of Henderson County.,* 241 F.3d 374, 379 (4th Cir. 2001). North Carolina law holds, "the initiation of administrative due process hearings in special education contested cases [must] be conducted in accordance with the state administrative procedure act, which, in turn, provides a 60-day limitations period." *Id*. (referencing N.C. Gen. Stat.§ 150B-23(f)). *C.M. v. Henderson* addressed in detail whether North Carolina's 60-day statute of limitations contravened public policy and held, "the adoption of this 60-day limitations period is not inconsistent with federal policies animating the IDEA." *Id*. at 385.

Plaintiffs' claims after July 1, 2005 continued to be subject to North Carolina's 60-day limitations period. The IDEA 2004 amendments statute of limitations provision states,

> A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, *or, if the State has an explicit time*

> *limitation for requesting such a hearing under this part, in such time as the state law allows.*

20 U.S.C. § 1415(f)(3)(c) (emphasis added). North Carolina's Administrative Procedures Act provides that "unless another statute or a federal statute or regulation sets a time limitation for the filing of a petition in contested cases against a specified agency, the general limitation for the filing of a petition in a contested case is sixty days." N.C. Gen. Stat. § 115C-116(d). While Plaintiffs contend that the two year IDEA statute of limitations should apply to their claims, North Carolina provided an explicit time limitation under the IDEA provision. Therefore, the 60-day statute of limitations remained in effect until North Carolina adopted a one year statute of limitations effective July 10, 2006. *See* N.C. Gen. Stat. § 115C-109.6(b).

However, a plaintiff's claims for private tuition reimbursement are only time-barred by the 60-day statute of limitations period in N.C. Gen. Stat. §150B-23(f) if they received procedurally compliant written notice. N.C. Gen. Stat. § 150B-23(f) outlines the notice requirements for an administrative agency. "The notice shall be in writing, and shall set forth the agency action, and shall inform the persons of the right, the procedure, and the time limit to file a contested case petition." *Id*.

IEP decisions are generally, but not always, "agency actions" as described in Section 150B-23(f); therefore, parents must have adequate notice that the school's decision regarding their child is final. For example, *C.M. v. Henderson* held that a school's letter to parents did not provide adequate notice of an agency action when the letter did not indicate the action was more significant than earlier actions taken by the school as part of ongoing negotiations with the parents. 241 F.3d at 386. The court in *C.M*. noted, however, that "satisfactory notice could have been achieved as easily as adding a single sentence to the August 8 letter," and the court's suggested sentence reads remarkably like the notice given below to Plaintiffs. *Id*. at 387. Despite

this, in the context of initial negotiations with a school system, an IEP meeting before a final educational program for a child is developed might not constitute a conclusive agency action, especially if the child has yet to enter the school system and his placement is still being negotiated. *See*, *B.P. v. Charlotte-Mecklenburg Bd. of Educ.*, 2009 U.S. Dist. LEXIS 126489, at \*44-45 (W.D.N.C. Oct. 26, 2009). Each of P.L.'s IEP decisions in question, however, occurred after P.L. had been in the school system for multiple years. For P.L., each IEP decision had an immediate and decisive impact on his current educational program. In this case, therefore, each IEP was a conclusive agency decision, notice of which, triggered the limitations period. *See id.* at \*46 (holding that IEP meetings are conclusive agency actions once a student is within the school system).

Here, Plaintiffs were given adequate prior written notice that the IEP meeting would result in a conclusive agency decision that must be appealed within 60 days; the notice appeared directly below the signature lines on each DEC 5/Prior Written Notice form and reads as follows:

> **You, as the parent, are entitled to the due process rights that are described in your <u>Handbook on Parents' Rights</u> if you disagree with this *action*. If you do not have a copy or would like another one, please contact your school principal or call the Director of Exceptional Children Programs. The deadline for filing a request for a due process hearing is sixty (60) days from the receipt of this notice. The principal or Director can also help you understand your rights if you have any questions, or you can call the exceptional Children Assistance Center…or the Governor's Advocacy Council for Persons with Disabilities. Please save this letter for your records.**

(J.A., Tab 7, M. Summ. J., Def.'s Ex. 39, 2) (emphasis in original). Plaintiffs contend these notices are insufficient because they contain boilerplate language. Plaintiffs' argument ignores case law holding this *exact* provision as sufficient. *See B.P.*, at \*46.

Because Plaintiffs did not file for a due process hearing until July 20, 2006, they are time barred from challenging any action or failure to act by CMS that took place prior to May 20, 2006. Plaintiffs unilaterally decided to enroll P.L. in Huntington Learning Center in November 2004. At that time, they did not inquire if tutorial services were eligible for reimbursement. In each IEP meeting from November 2004 until June 6 2006, Plaintiffs could have challenged whether P.L.'s IEP provided him with FAPE: Plaintiffs failed to do so. Plaintiffs' appeal of the denial of reimbursement for the tutoring before May 20, 2006 is clearly time barred. P.L.'s educational program in the school system from May 20, 2006 until June 6, 2006 was governed by the April 20, 2006 IEP decision. Plaintiffs failed to challenge the adequacy of this program in a timely manner and reimbursement for that time period must also be denied.

### 2. Plaintiffs' claims for reimbursement that are not time-barred

Since Plaintiffs challenged the June 6, 2006 IEP in a timely manner, they could potentially receive reimbursement for the tutoring between June 6, 2006 and June 8, 2006 if CMS failed to provide P.L. with FAPE for that time period. As will be discussed below, the June 6 IEP provided P.L. with FAPE, and Plaintiffs' request for reimbursement during this time period must therefore be denied.

### C. Reimbursement for the IEE

Plaintiffs are not entitled to reimbursement for the IEE at the Student Success Center because they failed to comply with the guidelines under 34 C.F.R. § 300.502. Parents are allowed to obtain an IEE for their child at any time but must follow federal guidelines to receive one at the public expense.

A disabled child must be evaluated before his or her initial placement in special services. If a child's parents disagree with the school system's evaluation, they have the right to obtain an

independent educational evaluation. *Id*. A parent is entitled to one independent educational evaluation each time the agency conducts an evaluation with which the parent disagrees. *Id.* § 300.502(b)(2)(5). When a parent requests an independent evaluation at public expense, the agency has two options. It can request a due process hearing to show its evaluation is appropriate. If it does not, the agency must ensure that an independent educational evaluation is provided at public expense, unless the agency demonstrates that an evaluation obtained by the parent did not meet agency criteria. Both options must be carried out "without unnecessary delay." *Id.* § 300.502(b)(2). Independent education examiners must meet the criteria set by 34 C.F.R. § 300.502(e)(1). The qualifications of the examiners and location must be the same as those the public agency uses when it initiates an evaluation. *Id*. The Handbook on Parent's Rights states, "If you pay for an evaluation for your child, you should not expect the school to pay for it unless you have received written approval for payment from the appropriate person in the school system. (J.A., Tab 7, Handbook Parents Rights 9.)

On May 1, 2006, Plaintiffs sent a letter to CMS requesting an independent evaluation. Plaintiffs did not wait for a response and unilaterally had P.L. evaluated on May 9, 2006, eight days later. The school did eventually reply, rejecting this claim and offering an appropriate list of evaluators. Plaintiffs did not receive written approval prior to having P.L. evaluated by the Student Success Center. While multiple dates have been offered as to when CMS eventually replied, even the date most favorable to Plaintiffs' position (June 8, 2006) falls well within the 60 days CMS had to appeal or respond to the letter.[1] Plaintiffs failed to show that they met the criteria set forth in the handbook for reimbursement of an IEE, or that the school's response

---

[1] If a parent seeks an independent evaluation under 34 C.F.R. § 300.502(b)(2), the school system may a request a due process hearing to show that its evaluation is appropriate. As discussed above, the North Carolina limitations period to file for such a hearing is 60 days.

violated any procedural requirements. Finally, as stated by the Handbook, Plaintiffs should not expect CMS to pay for the evaluation without written approval.

**D. Adequacy of the June 6, 2006 IEP**

Plaintiffs have failed to show that the June 6, 2006 IEP denied P.L. FAPE. The IDEA was intended to provide a "basic floor of opportunity" to every child. *Rowley*, 458 U.S. at 201. "States must provide specialized instruction and related services sufficient to confer some educational benefit upon the handicapped child, but the Act does not require the furnishing of every special service necessary to maximize each handicapped child's potential." *Hartmann v. Loudoun County Bd. of Educ.*, 118 F.3d 996, 1001 (4th Cir. 1997) (internal citations and quotation marks omitted). "The Supreme Court has held that under IDEA Congress intended to provide a satisfactory level of educational opportunity, not the best education that money could buy." *A.B. v. Lawson*, 354 F.3d 315, 319 (4th Cir. 2004).

The inquiry of whether the June 6, 2006 IEP denied P.L. a FAPE under the IDEA is two-fold: (1) has the state complied with the procedures set forth in the Act; and (2) is the individualized education program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? *Rowley*, 458 at 206-207. If both requirements are met, "the State has complied with the obligations imposed by Congress and the courts can require no more." *Id*. at 207. Furthermore, "once a procedurally proper IEP has been formulated, a reviewing court should be reluctant indeed to second-guess the judgment of education professionals." *M.M.*, 303 F.3d at 532 (quoting *Tice v. Botetourt County Sch. Bd.*, 908 F.2d 1200, 1207 (4th Cir. 1990)).

Plaintiffs' primary concern with the IEP is that P.L. is not receiving remediation that will have him working at grade level. Plaintiffs contend that the inadequacy of the IEP can be seen

through the similarity in goals among the IEPs. However, the information considered by the June 6, 2006 IEP team shows that P.L. scored at grade level on his fifth grade End of Grade test for reading. As of May 17, 2006, P.L. had a grade equivalent score of 5th grade, 7 month on the Star Reading test. At the time of the hearing, math End of Grade test scores were not available. While it is very possible that some of P.L.'s academic progress can be attributed to the services provided by Huntington, Plaintiffs have failed to show a sufficient lack of contribution by CMS. *See M.M.*, 303 F.3d at 533. This Court cannot ignore the objective progress made by P.L. P.L. is performing at grade level, and CMS is not obligated to go beyond this metric.

Plaintiffs' claim that the SHRO acted outside of the normal process of fact-finding by "discrediting a witness who [s]he had not seen or heard testify, in the face of [the] crediting of that same witness by a hearing officer who had seen and heard the witness testify." *G. v. Fort Bragg Dependent Sch.*, 343 F.3d 295, 303 (4th Cir. 2004). Plaintiffs allege that because the SHRO discredited the testimony of their witnesses, particularly Ms. Lewis and Ms. Shelling, her findings should be given little deference by this Court. The SHRO, however, did not make a factual determination towards the credibility of these witnesses, but merely noted their absence from the June 6, 2006 IEP meeting. (J.A., Tab 26, Decision SHRO, Findings Fact ¶¶ 13,16,18.) The SHRO concluded, "The only witness to testify on the June IEP was Mother. She, by her own admission, has no special education training. The two witnesses who could have answered substantive questions about the June IEP had been excused before the IEP was marked, offered, and received." *Id*.

The SHRO was correct in finding Plaintiffs failed to meet their burden of persuasion that the June 6, 2006 IEP was inadequate. The SHRO noted that the IEP team considered P.L.'s test scores showing him at grade level and that Plaintiffs failed to provide witness testimony showing

the inadequacy of the IEP. There is no basis for this Court to substitute its own judgment of sound educational policies for that of the IEP team or SHRO.

## III. CONCLUSION

For the reasons given above, the Court finds and concludes that (1) Plaintiffs' November 2004 to June 6, 2006 claims for Huntington tuition reimbursement are time-barred by the limitations period in N.C. Gen. Stat. §150B-23(f), (2) Plaintiffs' claims for Huntington tuition reimbursement after June 6, 2006 are denied because P.L. had been provided with FAPE, (3) Plaintiffs failed to comply with the requirements to receive reimbursement for an IEE, and (4) Plaintiffs have failed to demonstrate that the Defendant denied P.L. FAPE. Accordingly, Plaintiffs' claims for reimbursement and their request for an award of compensatory education are denied.

**SO ORDERED.**

Signed: July 23, 2010

Graham C. Mullen
United States District Judge